UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ROY HICKS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:20-cv-1019 |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) ) | |

## ORDER & OPINION

This matter is before the Court on Plaintiff's Motion for Remand (Doc. 7). Defendant has responded (Doc. 8), and the matter is ripe for review. For the reasons stated herein, Plaintiff's Motion is denied.

### BACKGROUND

Plaintiff Roy Hicks suffers from mesothelioma which he alleges is related to his exposure to asbestos. (Doc. 7 at 1–2). He sued numerous defendants in Illinois state court for exposing him to asbestos and thus causing his ailment. There were five potential sources of exposure to asbestos Plaintiff cites in his suit, among them his work for the City of Bloomington and his wife's work at General Electric. (Docs. 1-2 at 2, 7-1 at 2). In his work with the City of Bloomington, Plaintiff alleges regular contact with vehicles in the City's fleet which contained asbestos, including those manufactured, distributed, used, or sold by Defendant Ford Motor Company, among others. (Doc. 1-2 at 2). And Plaintiff alleges his wife's work at General Electric resulted in her being exposed to asbestos products manufactured, distributed, used,

or sold by John Crane, Inc., the dust from which he may have been exposed to. (Doc. 7 at 8).

Plaintiff is domiciled in Illinois and Defendant is incorporated in Delaware with its principal place of business in Michigan. (Doc. 1 at 2). Plaintiff had initially sued numerous other defendants, but all other defendants have either entered settlement agreements and been dismissed from the case or received summary judgment from the Illinois court, with one exception.[1] (Doc. 12). Based upon Defendant's submissions, it appears Caterpillar Inc., Deere & Co., John Crane Inc., McMaster-Carr Supply Co., and Navistar, Inc. were the defendants incorporated or having principal places of business in Illinois. (Doc. 12 at 2–4). Caterpillar, Deere, McMaster-Carr Supply, and Navistar settled; on January 9, 2020, Deere was the last non-diverse defendant to settle or receive judgment. (Docs. 12 at 2–4; 12-4; 12-10; 12-21; 12-23). On November 21, 2019, the Illinois court granted John Crane's motion for summary judgment in a document entitled "Agreed Order" which states "John Crane Inc.'s Motion for Summary Judgment is hereby granted based on lack of product identification over Plaintiff's objection." (Doc. 12-20). The matter was set to go to trial on January 13, 2020. (Doc. 7 at 1).

---

[1] The exception is Owens Illinois Inc., which filed a notice of bankruptcy and received an automatic stay. (Doc. 1 at 2). Despite its name, Owens Illinois is incorporated in Delaware with its principal place of business in Ohio. (Doc. 1 at 2). And even if Owens Illinois were a non-diverse defendant, "the presence of claims against a debtor defendant protected by the automatic stay does not preclude removal by a non-debtor defendant." *Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009); *see also Chilton Private Bank v. Norsec-Cook, Inc.*, 99 B.R. 402, 403 (N.D. Ill. 1989).

On January 10, 2020, Defendant filed a Notice of Removal (Doc. 1) removing the case to this Court. The asserted basis of jurisdiction was diversity. Plaintiff timely filed the instant Motion for Remand (Doc. 7) arguing removal was improper.

## LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). The asserted basis of federal jurisdiction in this case is diversity of the parties pursuant to 28 U.S.C. § 1332. (Doc. 1 at 1). Diversity jurisdiction "requires complete diversity: no plaintiff may be a citizen of the same state as any defendant." *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

## DISCUSSION

The question posed in the instant motion is whether John Crane Inc. remains a party to this case. If it does, complete diversity is not present because Plaintiff and John Crane are both citizens of Illinois; if it does not, complete diversity is present.[2]

---

[2] The Court has "an independent duty to ensure subject-matter jurisdiction." *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010); Fed. R. Civ. P. 12(h)(3). Pursuant to that duty, the Court also examined whether the other corporations bearing Illinois citizenship remain parties in this case. Because they appear to have

Two rules govern the inquiry. First, the "voluntary/involuntary" rule generally bars a case from becoming removable where any non-diverse defendants are dismissed against the plaintiff's wishes; but voluntarily dismissed non-diverse defendants present no obstacle to removal. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71–72 (7th Cir. 1992). Second, where a defendant was dismissed against the plaintiff's wishes, the doctrine of "fraudulent joinder" nevertheless allows an out-of-state diverse defendant to access the federal court where there exists "a claim against an in-state defendant" but it "simply has no chance of success." *Id.* at 73.[3] This doctrine, however, may be defeated by the "common-defense exception," where the reasons the diverse defendant argues cause fraudulent joinder of the non-diverse defendant apply equally to the diverse defendant, which effectively transforms the fraudulent joinder inquiry into analysis on the merits. *Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011).

I. **The Voluntary/Involuntary Rule**

The dismissal of John Crane was involuntary. Although the state court's order on summary judgment stated it was agreed, the text of the order stated the grant of summary judgment was over Plaintiff's objection. (Doc. 12-20). Defendant would therefore be unable to remove the case according to the voluntary/involuntary rule. *See Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) ("When the diversity-destroying defendant initiates its own dismissal, and when the court's order

---

been voluntarily dismissed, as explained *infra* they are no longer parties to the case for purposes of this analysis.

[3] "The term 'fraudulent joinder' is a bit misleading, inasmuch as the doctrine requires neither a showing of fraud . . . nor joinder." *Mayes v. Rapoport*, 198 F.3d 457, 461 n.8 (4th Cir. 1999).

4

is against the will of the plaintiff, the dismissal is not voluntary.") The Court notes Defendant did not attempt to argue this ground.

## II. The Doctrine of Fraudulent Joinder

The fraudulent joinder analysis is more complex. The Seventh Circuit has stated: "At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant? If a state court has come to judgment, is there any reasonable possibility that the judgment will be reversed on appeal?" *Poulos*, 959 F.2d at 73. All doubt is resolved in the favor of remand; Defendant must show "after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* (emphasis in original).

Defendant argues in the present procedural posture, Plaintiff cannot possibly get John Crane reinstated in the case because Plaintiff's failure to oppose summary judgment in a written filing acted to admit the facts alleged in the motion for summary judgment and waived the right to appeal. (Doc. 8 at 10–11). In support, Defendant cites (and attaches) *Chambers v. MW Custom Papers, LLC*, No. 19-cv-5362, a nearly identical case from the Northern District of Illinois where the court held fraudulent joinder allowed for removal. (Doc. 8-1).

Plaintiff argues the summary judgment order does not create fraudulent joinder, citing *Cincinnati Insurance Co. v. Production Design Products, Inc.*, No. 06-cv-915, 2007 WL 1021975, 2007 U.S. Dist. LEXIS 24667 (S.D. Ill. Apr. 3, 2007). (Doc. 7 at 10–11). Plaintiff presents two lines of argument: (1) the allegations in the complaint would be sufficient to receive relief, distinguishing this case from *Poulos*,

5

and (2) allowing removal here would essentially make fraudulent joinder present whenever a Plaintiff loses a motion for summary judgment. (Doc. 7 at 10–11).

As in this case, in *Poulos* the non-diverse defendant received summary judgment, although the Seventh Circuit noted the diverse defendant "could have discerned that the joinder of [the non-diverse defendant] was fraudulent when Poulos served his complaint." *Id.* at 73 n.4. Additionally, the Wisconsin court in that case gave the plaintiff leave to refile against the non-diverse defendant, but the Seventh Circuit held the remaining defendant "need not negate any possible theory that Poulos might allege in the future: only his present allegations count." *Id.* at 74. Then, continuing to focus on the allegations in Poulos's operative complaint, the Seventh Circuit held he had no chance of recovering damages in state court from the non-diverse defendant, and thus the non-diverse defendant was fraudulently joined. *Id.*

The Northern District's decision in *Chambers* was, as stated above, on a nearly identical situation to the present case. The court held "token resistance" to the entry of summary judgment at a motion hearing was insufficient to suggest a plaintiff had any chance of success on appeal because "she could not introduce evidence on appeal that she did not introduce in the circuit court." (Doc. 8-1 at 3). Thus, there was no chance the non-diverse defendant in that case—which, coincidentally, was also John Crane—would be brought back into the case by appellate reversal. (Doc. 8-1 at 3). Additionally, the Northern District rejected the argument that the interlocutory nature of summary judgment orders under Illinois law altered the equation; it held "[d]eciding what might have happened on appeal is a hypothetical exercise to decide

6

whether, when all is said and done, there is any risk that a non-diverse defendant might come back and destroy diversity after this court has come to judgment." (Doc. 8-1 at 3).

This Court agrees with the Northern District. The clear direction of the inquiry prescribed in *Poulos* is to determine whether a non-diverse defendant might yet return to the case. *See* 959 F.2d at 73. Procedural bars may establish a negative answer as much as substantive review. And the Court is not concerned this holding would vitiate the Southern District's observation that "it cannot be the case that a defendant can successfully claim fraudulent joinder *every* time claims against a non-diverse defendant fail to or cannot survive summary judgment." *See Cincinnati Ins. Co.*, 2007 WL 1021975 at * 5, 2007 U.S. Dist. LEXIS 24667 at *16 (emphasis in original). By resting on the inability to win on appeal due to waiver and admittance by the failure to file a written response, there is no danger that a grant of summary judgment alone to a non-diverse defendant will *necessitate* a finding of fraudulent joinder. Additionally, because the entry of summary judgment and the failure to file a response are court records fit for judicial notice, *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018), finding fraudulent joinder in this context avoids the potentially knotty issues involved in a summary inquiry into evidence beyond the face of the complaint.

The *Chambers* court also correctly described why the interlocutory nature of a summary judgment order does not prevent a finding of fraudulent joinder. But this Court was concerned by Plaintiffs' note that he might file a motion for reconsideration

"and provide evidence of product identification which was not in the record at the time the court ruled, but which does exist." (Doc. 7 at 5). This could bring John Crane back into the suit, destroying diversity. But research reveals it is not a reasonable possibility.

Under Illinois law, "[t]he purpose of a motion to reconsider is to alert the court of newly discovered evidence that was unavailable at the time of the hearing, changes in the law, or errors in the court's application of the law." *Belluomini v. Zaryczny*, 7 N.E.3d 1, 7 (Ill. App. 2014). Indeed, the Illinois courts have expressed a complete lack of willingness to reconsider for any evidence already within a litigant's grasp:

> Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be.

*Robidoux v. Oliphant*, 201 Ill. 2d 324, 346 (2002) (quoting *Gardner v. Navistar Int'l Transp. Corp.*, 571 N.E.2d 1107, 1111 (Ill. App. 1991) (emphasis in original)); *see id.* at 347 (referring to this quotation as among "the sound policy reasons invoked by the trial judge."). The Court therefore finds Plaintiff does not have a reasonable possibility of being able to supplement the record. And to the extent Plaintiff meant to suggest more evidence or new law could turn up allowing reconsideration, taking that to mean there was no fraudulent joinder is inconsistent with *Poulos*; there, the Seventh Circuit held the chance "that some facts might turn up to support a claim against" a non-diverse defendant did not preclude a finding of fraudulent joinder. 959 F.2d at 74. Accordingly, the Court finds John Crane was fraudulently joined.

8

**III.     The Common-Defense Exception**

Plaintiff asserts the common-defense exception applies in this case, barring a finding of fraudulent joinder. (Doc. 7 at 9). Defendant believes it does not. (Doc. 8 at 6). The source of the parties' disagreement is over the necessary showing for the common-defense exception to apply. Plaintiff focuses on the passage of *Walton* reading "a plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the non[-]diverse defendant is no weaker than his claim against the diverse defendants." 643 F.3d at 1001; (*see also* Doc. 7 at 8–9). Indeed, Plaintiff states the claims against John Crane and Defendant are identical. (Doc. 7 at 9). Defendant responds the standard requires the legal defense analyzed to be common among the diverse and non-diverse defendants, such that a finding of fraudulent joinder of the non-diverse defendant necessitates a judgment on the merits for the diverse defendant. (Doc. 8 at 6–7). Here, Defendant argues, the reason Plaintiff's claims against John Crane cannot succeed is due to findings and proceedings specific to John Crane which do not bear on Defendant's liability. (Doc. 8 at 6–7). The Court agrees with Defendant's reading of the standard; Plaintiff's conclusion that the analysis is on the overall relative strength of the claims is belied by the name of the exception and contrary to precedent.

The common-defense exception is rooted in *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146 (1914). There, the Supreme Court held fraudulent joinder could not be found where such finding "manifestly went to the merits of the action as an entirety, and not to the joinder; that is to say, it indicated that the plaintiff's case

9

was ill founded as to all the defendants." *Cockrell*, 232 U.S. at 153. Because it went to the whole case rather than merely the allegedly fraudulently joined defendants, "this was not such a showing as to engender or compel the conclusion that the [non-diverse defendants] were wrongfully brought into a controversy which did not concern them." *Id.* The exception thus avoids the situation where "the district court, in the guise of deciding whether the joinder was fraudulent, step[s] from the threshold jurisdictional issue into a decision on the merits." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). As the Fifth Circuit put it:

> when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc).

Applying the standard to the facts at bar, it is clear the common-defense exception does not prevent removal. As mentioned in the Background, Plaintiff's theory of exposure to Defendant's products stems from his work for the City of Bloomington. By contrast, the theory of exposure with regard to John Crane is Plaintiff's wife "was exposed to John Crane products through her work at General Electric . . . and brought asbestos dust home on her clothing, thereby exposing [Plaintiff] to asbestos through *his wife's* employment." (Doc. 7 at 8 (emphasis in original)). Therefore Plaintiff could fail on his claim against John Crane while succeeding on his claim against Defendant. The Illinois court's summary judgment order found only insufficient evidence of exposure to John Crane products; it did not

10

implicate Defendant's liability. Moreover, the specific reason the Court found fraudulent joinder—the operation of Illinois procedural rules making it impossible for Plaintiff to revive his claim against John Crane—does not implicate his on-going litigation against Defendant. Put another way, the Court's analysis of fraudulent joinder did not require comments on the merits of Plaintiff's case against Defendant. The common-defense exception therefore does not bar the Court's finding of fraudulent joinder.

## Conclusion

Plaintiff's Motion for Remand (Doc. 7) is DENIED. This matter is referred to Magistrate Judge Jonathan E. Hawley for any necessary pretrial proceedings.

SO ORDERED.

Entered this 25th day of February 2020.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
